IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANIEL R. GRIFFIN,

      Plaintiff,

v.

MEGAN J. BRENNAN,
Postmaster General
United States Postal Service,

      Defendant.

CIVIL ACTION FILE NO.
1:20-cv-00584-CC-LTW

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on a Motion to Dismiss [Doc. 13] filed by

Defendant Megan J. Brennan, Postmaster General of the United States Postal Service

("Postmaster").  Defendant Postmaster moves to dismiss Plaintiff Daniel R. Griffin's

Complaint [Doc. 1] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim upon which relief can be granted.[1]  [Doc. 13].  For the reasons set forth

---

[1] Defendant also stated that the Motion to Dismiss was brought pursuant to Rule 12(b)(1).  [Doc. 13 at 1].  However, Defendant did not make any argument showing a lack of subject matter jurisdiction.  [Id.].  In her corrected memorandum, Defendant asserted that the Motion to Dismiss was brought only pursuant to Rule 12(b)(6) for failure to state a claim.  [Doc. 14-2 at 1].

below, the Court **RECOMMENDS** that Defendant's Motion [Doc. 13] to Dismiss be **DENIED**.

I.     **BACKGROUND**

Plaintiff Griffin filed the present employment discrimination action *pro se* on February 7, 2020. [Doc. 1]. Plaintiff, who is Caucasian, alleges in the Complaint that he has worked for the U.S. Postal Service at the Stockbridge Post Office as a Rural Carrier Associate since September 1997. [Id. ¶¶ 1, 6, 7]. According to the Complaint, after Plaintiff made Equal Employment Opportunity ("EEO") complaints with the Agency, his supervisors investigated him on December 28, 2016, for allegedly failing to follow instructions and failing to deliver the mail. [Id. ¶ 11]. The next day, his schedule was changed. [Id.]. On January 26, 2017, one of Plaintiff's supervisors informed him that he must take breaks and lunch when instructed by her. [Id. ¶ 14]. Thereafter, she began instructing Plaintiff on when he should take his breaks and lunch hours. [Id.]. Plaintiff alleges that no African-American carriers were similarly treated. [Id. ¶ 15].

The Complaint further asserts that on February 13, 2017, Plaintiff's supervisor accused him of failing to report to work after he had been instructed not to report. [Id. ¶ 16]. Plaintiff's supervisor also yelled at him in the presence of his co-workers. [Id.]. Plaintiff alleges that his supervisor continued to make false accusations against him

and investigated him in March and April 2017.  [Id. ¶¶ 18-22].  Although Plaintiff complained of discrimination and retaliation, no action was taken to investigate his complaints.  [Id. ¶¶ 21, 22].  The Complaint also alleges that in July 2017, Plaintiff was denied a request to take leave without pay.  He was informed that his request was denied because he was on probation.  [Id. ¶ 23].  Plaintiff alleges that an African-American co-worker was allowed to take leave even though she was on probation.  [Id. ¶ 24].

Based on these facts, Plaintiff asserts claims against Defendant Postmaster for race discrimination and retaliation.  [Id. ¶¶ 27-29].  Plaintiff also alleges that Defendant subjected him to a racially and retaliatory hostile work environment.[2]  [Id. ¶ 30]. Plaintiff's claims against Defendant are brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*  [Id. ¶¶ 27-30].  Defendant has moved to dismiss all of Plaintiff's claims.  [Docs. 13, 14].

## II.    LEGAL STANDARD

When a motion to dismiss is brought pursuant to Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  See Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006);

---

[2] Although Plaintiff makes it clear that he is "European American" and Caucasian, he mistakenly asserts that he is "African-American/black" in two places in his Complaint.  [Doc. 1 ¶¶ 28, 30].

M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim. Rather, for a complaint to properly state a claim, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the

4

speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted) (emphasis omitted).

A plaintiff's complaint is required to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In addition, the allegations supporting a claim are to be made in separate paragraphs "each limited as far as practicable to a single set of circumstance." Fed. R. Civ. P. 10(b). The court's focus is whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted); accord T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) ("The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .") (Tjoflat, J., dissenting). "A document filed *pro se* is 'to be

liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" <u>Erickson</u>, 551 U.S. at 94 (citations omitted).

## III.   DISCUSSION

### A.   Title VII Retaliation Claims

Plaintiff Griffin alleges Defendant retaliated against him for filing complaints of discrimination.  Plaintiff's retaliation claims against Defendant Postmaster are brought pursuant to Title VII and asserted in Counts I, II, and III of his Complaint.  [Doc. 1 ¶¶ 27-30].   Title VII acts to shield employees from retaliation for certain protected practices.  Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Plaintiff alleges that Defendant subjected him to retaliation when his supervisors took various adverse actions against him and treated him with hostility.  [Doc. 1 ¶¶ 27-30].

Defendant argues Plaintiff cannot establish a prima facie case of retaliation. [Doc. 14-2 at 11].  A prima facie case is the first step in the burden-shifting framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792,

802 (1973) to evaluate Title VII claims.[3]  "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002).  The Eleventh Circuit has made it clear that the Iqbal-Twombly pleading standard governs the motion to dismiss analysis, not the McDonnell Douglas burden-shifting evidentiary framework.  See Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1245-46 (11th Cir. 2015) (holding that the McDonnell Douglas burden-shifting framework is not the governing standard in deciding a motion for default, which requires the court to find a sufficient basis in the pleadings for the judgment entered and is akin to a motion to dismiss for failure to state a claim).  Thus, a "complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss." Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011).   Nevertheless, "[C]omplaints alleging discrimination still must meet the 'plausibility standard' of Twombly and Iqbal." Id.

Defendant argues Plaintiff has not alleged facts showing that he was subjected to an adverse employment action.  [Doc. 14-2 at 12-15].  According to Defendant, the

---

[3] After the plaintiff establishes a prima facie case, the defendant has an opportunity to offer legitimate, nondiscriminatory reasons for the actions taken against the plaintiff.  McDonnell Douglas, 411 U.S. at 802.

actions about which Plaintiff complains do not rise to the level of adversity necessary to bring a retaliation claim. [Id.]. The Supreme Court has held that a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted). Noting that "the significance of any given act of retaliation will often depend upon the particular circumstances[,]" the Court in Burlington Northern gave the following examples of how the context of an employment action determines whether it rises to the level of being materially adverse:

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

Burlington Northern, 548 U.S. at 69.

Plaintiff Griffin alleges in his Complaint that after he filed EEO charges of discrimination, his supervisors took adverse employment actions against him and treated him with hostility. [Doc. 1 ¶¶ 10, 28-30]. Specifically, Plaintiff alleges that Supervisor Robin Watson: admonished Plaintiff to take breaks and lunch when

8

instructed on January 29, 2016; conducted an investigative interview of Plaintiff on December 28, 2016; changed his work schedule on December 29, 2016; yelled at Plaintiff to leave the workroom floor and falsely accused him of not reporting for a Route Count on February 13, 2017; and falsely stated that Plaintiff had previously been instructed not to answer the lobby door on March 17, 2017.  [Id. ¶¶ 28a.-b., 29b.-e.]. Plaintiff also alleges that Supervisor Robert Thompson issued Plaintiff a letter of warning in early April 2017 and denied his request for leave without pay in early July 2017.  [Id. ¶¶ 28c.-d.].  Defendant argues that none of the actions alleged by Plaintiff were sufficiently adverse to support his retaliation claim.  [Doc. 14-2 at 12-15].

The Court finds at this stage of the proceedings that Plaintiff has adequately pleaded factual allegations showing that he was subjected to materially adverse actions. As previously noted, the Supreme Court has held that a schedule change and not being invited to a work lunch can constitute adverse actions supporting a retaliation claim. See Burlington Northern, 548 U.S. at 69.  The actions alleged by Plaintiff in his Complaint, such as having supervisors investigate him, admonish him, falsely accuse him, and change his work schedule, are similar to the examples articulated by the Supreme Court in Burlington Northern.  Especially in light of Plaintiff's *pro se* status, it appears plausible that he will be able to produce evidence showing that the complained-of actions "might have dissuaded a reasonable worker from making or

9

supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. Dismissal of Plaintiff's retaliation claims is not warranted based on an alleged lack of material adversity.

Defendant also contends that Plaintiff's Title VII retaliation claims should be dismissed because he cannot show a causal connection between the complained-of adverse actions and his protected activity. [Doc. 14-2 at 15-16]. Defendant makes a brief argument that Plaintiff "has not established that his prior EEO activity was a factor in management's actions regarding the alleged incidents." [Id. at 15]. The Court disagrees. "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations and internal quotation marks omitted). When determining whether a causal link exists, the court is essentially looking to see if any inference of retaliation can be drawn from the circumstances surrounding the employer's action. See Morgan v. City of Jasper, 959 F.2d 1542, 1547 (11th Cir. 1992) ("To establish the causal connection between her protected activity and the adverse employment action, Morgan had to demonstrate that defendant was discriminatorily motivated, which she could do by circumstantial evidence.").

10

Plaintiff alleges that he first engaged in protected activity when he filed EEO charges with the Agency on July 30, 2015 and October 22, 2015.  [Doc. 1 ¶¶ 9, 10; Doc. 21-1 at 6; Doc. 21-2 at 104; Doc. 21-3 at 28].[4]  Plaintiff also alleges that Supervisor Robert Thompson was made aware of Plaintiff's EEO activity on October 1, 2015 and again on January 4, 2016.  [Doc. 21-1 at 6-7].  Plaintiff further alleges Supervisor Robin Watson was notified of Plaintiff's EEO activity in June 2016.  [Id. at 7].  In late April or early May of 2017, Plaintiff notified Marlon Ellis, Officer in Charge of the Stockbridge Post Office, that Ms. Watson and Mr. Thompson were subjecting Plaintiff to discrimination and retaliation.  [Doc. 1 ¶ 21].  Plaintiff also filed a formal EEO charge of discrimination on July 7, 2017.  [Doc. 1 ¶ 25; Doc. 21-2 at 44-49].

The Complaint alleges that Supervisor Watson admonished Plaintiff to take breaks and lunch when instructed in January 2016, conducted an investigative

---

[4] Plaintiff referenced his EEO charges in the Complaint, but he did not attach them.  [Doc. 1 ¶ 10].  However, both Defendant and Plaintiff attached the charges to their respective briefs.  [Docs. 14, 21].  Plaintiff's EEO charges are properly considered in evaluating Defendant's Motion to Dismiss because the documents are central to Plaintiff's case and are referred to in the Complaint.  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).  The Court, however, will not consider the investigative findings or the outcome of the EEO administrative proceedings.  See Bank of Camilla v. St. Paul Mercury Ins. Co., 531 F. App'x 993, 994 (11th Cir. 2013); Gilmore v. Donahoe, No. 8:12-CV-1415-T-33MAP, 2013 WL 2338760, at *3 (M.D. Fla. May 29, 2013) (EEOC's decision finding no discrimination did not determine plaintiff's rights or have legal consequences but merely concluded agency investigation) (citing Newsome v. EEOC, 301 F.3d 227, 232 (5th Cir. 2002)).

interview of Plaintiff and changed his work schedule in December 2016, yelled at Plaintiff and falsely accused him of not reporting for a Route Count in February 2017, and falsely stated that Plaintiff had previously been instructed not to answer the lobby door in March 2017.  [Doc. 1 ¶¶ 28a.-b., 29b.-e.].  The Complaint also alleges that Supervisor Thompson issued Plaintiff a letter of warning in early April 2017 and denied his request for leave without pay in early July 2017.  [Id. ¶¶ 28c.-d.].  As noted *supra*, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . ."  Twombly, 550 U.S. at 555 (citations omitted).  Given Plaintiff's *pro se* status, the Court finds that the Complaint has sufficiently pleaded facts alleging that a causal link exists between his complaints of discrimination and the adverse actions.  See Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) ("[W]ildly implausible allegations in the complaint should not be taken to be true, but the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations.").  For these reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 13] be **DENIED** on Plaintiff's Title VII retaliation claims.

### B.    Title VII Race Discrimination Claims

Plaintiff's Complaint alleges that Defendant violated Title VII by taking a number of adverse actions against him based on his race. [Doc. 1 ¶¶ 27. 28]. Title VII makes it unlawful for an employer "to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]"  42 U.S.C. § 2000e-2(a)(1).  "Under Title VII, a plaintiff may prevail on a claim by showing that [an impermissible factor such as race] 'was a motivating factor' for an employment decision."  Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(m)).  "To state a Title VII discrimination claim, a complaint need only provide enough factual matter to 'plausibly suggest' that the plaintiff suffered an adverse employment action due to intentional discrimination." Davis v. Johnson, No. 1:15-CV-4137-TWT-JKL, 2016 WL 3360568, at *3 (N.D. Ga. Apr. 22, 2016) (quoting Surtain, 789 F.3d at 1246), report and recommendation adopted by 2016 WL 3349343 (N.D. Ga. June 15, 2016).

Defendant contends that the Complaint does not allege that Plaintiff was subjected to an adverse employment action.  [Doc. 14-2 at 5-10].  To establish an adverse employment action, the "employee must show a *serious and material* change in the terms, conditions, or privileges of employment so that a reasonable person in the circumstances would find the employment action [to] be materially adverse."  Jefferson v. Sewon America, Inc., 891 F.3d 911, 921 (11th Cir. 2018) (citation and internal quotation marks omitted) (emphasis in original).  The adversity must be more than "some *de minimis* inconvenience or alteration of responsibilities."  Doe v. DeKalb County School Dist., 145 F.3d 1441, 1447-48 (11th Cir. 1998) (adopting an objective

13

test to determine if an employment action is adverse); accord Cobb v. City of Roswell, Ga., ex rel. Wood, 533 F. App'x 888, 896 (11th Cir. 2013).  While proof of direct economic consequences is not always required, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). Further, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Id. (citing DeKalb County School Dist., 145 F.3d at 1452); accord Sampath v. Immucor, Inc., 271 F. App'x 955, 962 (11th Cir. 2008).

Defendant argues dismissal is warranted on Plaintiff's Title VII racial discrimination claims because the complained-of actions could not objectively be construed as adverse employment actions. [Doc. 14-2 at 6-9].  Plaintiff alleges in the Complaint that alleges Defendant subjected him to discrimination based on race when Supervisor Robin Watson admonished Plaintiff to take breaks and lunch when instructed in January 2016 and changed his work schedule in December 2016. [Doc. 1 ¶¶ 28a.-b.].  The Complaint also alleges that Plaintiff was discriminated against when Supervisor Robert Thompson issued Plaintiff a letter of warning in early April 2017 and denied his request for leave without pay in early July 2017.  [Id. ¶¶ 28c.-d.].  At

this stage of the litigation, the undersigned cannot find as a matter of law that Plaintiff's Complaint fails to sufficiently allege that he suffered adverse employment actions.

With regard to Plaintiff's allegations that Ms. Watson changed his work schedule and admonished him to take breaks and lunch when instructed, the undersigned notes that courts are "reluctant to hold that changes in job duties [or schedules] amount to adverse employment action when unaccompanied by any tangible harm." Davis, 245 F.3d at 1244 (citing Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (holding that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes")). Claims based on changes in an employee's work schedule or work assignments "strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." Id. However, in some circumstances, a change in a work schedule or work assignment "may be so substantial and material that it does indeed alter the terms, conditions, or privileges of employment." Id., 245 F.3d at 1245. With regard to Plaintiff's allegations that Mr. Thompson issued him a letter of warning and denied his request for leave without pay, the Court similarly finds that whether these complained-of actions rose to the level of being materially adverse will depend on facts such as whether Plaintiff suffered a loss

15

in pay or any other repercussions as a result of the actions. See Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283-84 (11th Cir. 1999) (per curiam); DeKalb County School Dist., 145 F.3d at 1452.

When ruling on a motion to dismiss, the court does not decide the merits of the case, but simply evaluates whether the factual allegations in the complaint "'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 550 U.S. at 558). The undersigned finds that Plaintiff satisfies this requirement. The Complaint contains sufficient factual allegations to support a reasonable inference that Defendant subjected Plaintiff to materially adverse employment actions in support of his Title VII racial discrimination claims. Furthermore, as noted *supra*, a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94.

Defendant next argues Plaintiff's discrimination claims should be dismissed because he cannot identify any comparators outside his protected class who were similarly situated but treated more favorably. [Doc. 14-2 at 9-10]. This is not the proper standard to consider in evaluating Defendant's Motion to Dismiss. Whether a plaintiff can identify a similarly situated comparator is an element of the McDonnell Douglas prima facie case and is an issue not to be addressed on a motion to dismiss but on a motion for summary judgment. At the pleading stage, the relevant issue is whether

the "plaintiff has alleged sufficient facts to plausibly suggest that there was a causal link between a plaintiff's protected characteristic and an adverse employment action, or other facts otherwise supporting a 'reasonable inference' of discrimination in relation to an adverse action." Woldeab v. DeKalb County School Dist., No. 1:16-CV-1030-CAP-JKL, 2018 WL 10510815, at *5 (N.D. Ga. Nov. 6, 2018) (citing Henderson, 436 F. App'x at 937). Even if it were necessary to identify comparators, Plaintiff has satisfied this requirement by alleging in his Complaint that none of his African-American co-workers (including Patrick Paton, Mashanda Lawrence, and Jerilyn Morton) were subjected to such adverse actions as being falsely accused of not following instructions, being required to work unfavorable work schedules, or being denied leave under similar circumstances. [Doc. 1 ¶¶ 12, 24].

Defendant also argues that it had legitimate, nondiscriminatory reasons for taking certain actions against Plaintiff and that he cannot rebut these reasons as pretextual. [Doc. 14-2 at 7; Doc. 29 at 3]. The Court, however, is not permitted to consider Defendant's proffered reasons in addressing a motion to dismiss. Any legitimate, nondiscriminatory reasons set forth by the defendant are only to be considered by the court when using the burden-shifting framework under McDonnell Douglas which, as previously noted, "is an evidentiary standard, not a pleading requirement." Swierkiewicz, 534 U.S. at 510.

17

In sum, the Court finds that Plaintiff's Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).   It is, therefore, **RECOMMENDED** that Defendant's Motion to Dismiss [Doc. 13] be **DENIED** on Plaintiff's Title VII racial discrimination claims.

## C.   Title VII Hostile Work Environment Claims

Plaintiff has also alleged that Defendant subjected him to a hostile work environment based on his race and in retaliation for his protected activity. [Doc. 1 ¶ 30].  Title VII is violated when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Id.  The Court is required to consider "whether, under the totality of the circumstances, a reasonable person would find the harassing conduct severe or pervasive [enough] to alter the terms or conditions of the plaintiff's employment." Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1251 (11th Cir. 2014) (citation

omitted); see also Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) ("Either severity *or* pervasiveness is sufficient . . . .") (emphasis in original).

Defendant makes a brief argument that Plaintiff's allegations "do not satisfy the standard for avoiding dismissal on his hostile work environment claims." [Doc. 14-2 at 16]. According to Defendant, the conduct about which Plaintiff complains "is not objectively severe and pervasive even when viewed collectively." [Id.]. This is the entirety of Defendant's argument on this issue and the Court finds it unpersuasive. The Complaint alleges that Plaintiff's supervisors subjected him to investigations, accused him of failing to follow instructions, changed his schedule, informed him that he must take breaks and lunch when instructed, accused him of failing to report to work, yelled at him in the presence of his co-workers, made false accusations against him, and denied a request to take leave without pay. [Doc. 1 ¶¶ 11, 14-23]. Although Plaintiff's Title VII hostile work environment claim may not be able to survive a motion for summary judgment due to a lack of severity or pervasiveness, the Court finds the Complaint contains sufficient facts alleging that Plaintiff was subjected to unlawful harassment. The undersigned, therefore, **RECOMMENDS** that Defendant's Motion to Dismiss [Doc. 13] be **DENIED** on Plaintiff's Title VII hostile work environment claim.

## IV.   **CONCLUSION**

Based on the foregoing reasons and cited authority, the Court **RECOMMENDS**

that Defendant's Motion to Dismiss [Doc. 13] be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this   12   day of January, 2021.


LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

20